UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SRS TECHNOLOGIES, LLC,

        Plaintiff,

vs.

Case No. 17-13207
HON. GEORGE CARAM STEEH

NATIONAL MINORITY TRUCKING
ASSOCIATION, INC.,

        Defendant.
_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS, (DOC. 4),
AND DISMISSING CASE WITHOUT PREJUDICE

Plaintiff SRS Technologies, LLC sued defendant National Minority Trucking Association, Inc. for disputes arising out of the parties' contract for software services. Plaintiff brings two counts; breach of contract and unjust enrichment. This matter is presently before the Court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). (Doc. 4). The Court heard oral argument on January 31, 2018. For the reasons stated below, defendant's motion to dismiss will be GRANTED.

## I. Background

Plaintiff, a Michigan company located in Novi, Michigan, provides transportation and fleet management technology. (Doc. 8-1 at PageID 99). It creates and hosts mobile applications in Michigan and delivers service to trucking, transportation, and field service businesses. (Doc. 8-1 at PageID 99-100). Defendant, a Georgia corporation with its principal place of business in Georgia, provides business resources and services to a subscription-based membership of minority individuals in the trucking industry. (Doc. 4-3 at PageID 42). Defendant does not have an office or employees in Michigan. (*Id.*). Five of defendant's 7,000 customers live in Michigan. (*Id.*). Defendant allegedly solicited customers and business partners in Michigan by hosting or participating in training workshops, seminars, and tradeshows throughout the country, including Michigan. (Doc. 8-1 at PageID 101).

The parties entered a contract on or about December 5, 2016. (Doc. 8-1 at PageID 102). Plaintiff was to provide software and services for three years in exchange for payments made on a monthly basis. Defendant asserts that plaintiff reached out to defendant in Georgia to solicit the contract. (Doc. 4-3 at PageID 43). Plaintiff asserts that the contract was initially facilitated through a mutual business connection located in

Michigan, not a unilateral solicitation. (Doc. 8-1 at PageID 101). The parties negotiated the contract by phone and electronic message. (Doc. 8-1 at PageID 103). Defendant did not visit Michigan in relation to this contract. (Doc. 4-3 at PageID 43).

Defendant made payments under the contract from Georgia. It eventually ceased payment. Plaintiff thereafter filed the instant lawsuit.

## II. Legal Standard

Plaintiff bears the burden of establishing the Court's personal jurisdiction over defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where, as here, the Court does not conduct an evidentiary hearing regarding personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.* at 887. "Nevertheless, the plaintiff may not simply reassert the allegations contained in its pleadings, but instead must 'set forth specific facts showing that the court had jurisdiction.'" *GKN Driveline v. Stahl Specialty Company*, No. 15-cv-14427, 2016 WL 1746012, at *3 (E.D. Mich. May 3, 2016) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The Court must view the pleadings and affidavits in the light most favorable to plaintiff, *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), and will not consider contrary assertions made by

defendant. *Neogen*, 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

### III. Analysis

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)).

Michigan's long-arm statute extends general jurisdiction pursuant to Mich. Comp. Laws § 600.711 and limited jurisdiction pursuant to Mich. Comp. Laws § 600.715. General jurisdiction enables a court to exercise jurisdiction over a corporation "regardless of whether the claim at issue is related to its activities in the state or has an in-state effect." *Neogen*, 282 F.3d at 888. "In contrast to general, all-purpose jurisdiction, specific [or limited] jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Neogen*, 282 F.3d at 888 (stating that limited jurisdiction "extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect.").

**A. General Jurisdiction**

"In order to be subject to general jurisdiction in Michigan, a nonconsenting, nonresident corporation . . . must have carried on a 'continuous and systematic part of its general business' within Michigan." *Neogen*, 282 F.3d at 889 (citing Mich. Comp. Laws § 600.711(3)). The Supreme Court stated that the appropriate inquiry is whether a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S.Ct. 746, 749 (2014) (quoting *Goodyear*, 564 U.S. at 923). Michigan courts require foreign corporations to "actually be present within the forum state on a regular basis, either personally or through an independent agent." *Glenn v. TPI Petroleum, Inc.*, 305 Mich.App. 698, 707 (2014). In making this determination, Michigan courts consider "whether the particular corporate entity has a physical location, officers, employees, or bank accounts in Michigan," and the corporation's "conduct in soliciting and procuring sales and purchases within Michigan." *Id.* at 707.

The Court does not have general jurisdiction over defendant. "[T]he place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction[.]" *Daimler*, 134 S. Ct. at 760. Defendant is a Georgia corporation with its principal place of business in Georgia, and

while, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," this is simply not such "an exceptional case." *Id.* at 761 n.19. Plaintiff does not present evidence that defendant was present in Michigan on a regular basis. Defendant does not have a physical location, officers, or employees in Michigan. There is no evidence that defendant has bank accounts in Michigan. Finally, while five of defendant's 7,000 customers live in Michigan, plaintiff does not set forth specific facts illustrating that defendant solicited and procured sales and purchases in Michigan such that it is "essentially at home" here. *Id.* at 749.

**B. Limited Jurisdiction**

Mich. Comp. Laws § 600.715 provides limited personal jurisdiction over a nonresident corporation for claims "arising out of the act or acts which create any of the following relationships," including "the transaction of any business within the state." Mich. Comp. Laws § 600.715(1). "[T]he slightest act of business in Michigan" satisfies this standard. *Neogen*, 282 F.3d at 888 (quoting *Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)). Establishing the requisite showing is so "extraordinarily easy" that Michigan courts have stated that "[t]he only real limitation placed

on this [long arm] statute is the due process clause." *Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000) (internal quotations and citations omitted).

The Sixth Circuit has held that an exchange of correspondence and telephone calls between a non-resident defendant and the plaintiff in Michigan, along with sending payments to Michigan, can be enough to satisfy limited personal jurisdiction for the purposes of Michigan's long-arm statute. *Lanier*, 843 F.2d at 906.

Although Mich. Comp. Laws § 600.715(1) authorizes personal jurisdiction over defendant, plaintiff must "present a prima facie case that the district court's exercise of personal jurisdiction would not offend due process." *Neogen*, 282 F.3d at 889 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). "[Plaintiff] must therefore establish with reasonable particularity sufficient 'minimum contacts' with Michigan so that the exercise of jurisdiction over [the defendant] would not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 889 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). In the Sixth Circuit, this analysis is guided by a three-prong test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's

> activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

**1. Defendant Did Not Purposefully Avail Itself of the Privilege of Acting in Michigan.**

"Purposeful availment . . . is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state, and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Neogen*, 282 F.3d at 889 (citations, quotation marks, and emphasis omitted). "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (quoting *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)).

Plaintiff makes numerous assertions regarding its own contacts with Michigan, including that it hosts the software in Michigan and its intellectual property rights are protected by Michigan law. But, "it is the defendant, not

the plaintiff or third parties, who must create contacts with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014).

"A defendant is considered to have purposefully availed itself of the forum state where it 'reaches out' to or otherwise solicits business from the plaintiff." *Converting Alternatives Int'l, LLC v. VacPac, Inc.*, No. 16-CV-13772, 2017 WL 1164717, at *4 (E.D. Mich. Mar. 29, 2017). Defendant asserts that it did not reach out to plaintiff in Michigan to begin contract negotiations. Defendant states that plaintiff took the first step to solicit business as its employee contacted defendant in Georgia. Plaintiff contests this characterization; asserting that the parties' relationship did not arise from a cold call or plaintiff's unilateral solicitation, but was instead initially facilitated through a mutual business connection located in Michigan. The Court must view the evidence in the light most favorable to plaintiff. Nonetheless, this contact does not create limited jurisdiction because it does not illustrate that defendant reached out or solicited business from plaintiff in Michigan.

The parties' communications do not establish sufficient contacts. Defendant did not visit Michigan to negotiate the contract. Instead, it communicated with plaintiff through phone calls and electronic messages. Plaintiff relies on *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), for the

proposition that "[t]he acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Id.* at 332. Plaintiff's reliance on *Neal* is misplaced. This is a breach of contract and unjust enrichment action. It is not a case where a defendant's communications form the basis of the plaintiff's claims. Furthermore, making payments in the forum state is an ancillary factor which does not provide the minimum contacts required by due process on its own. *See Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997); *Campbell v. Bridgeview Marina*, 347 F. Supp. 2d 458, 463 (E.D. Mich. 2004).

The parties do not appear to have an ongoing course of dealing. The contract is the sole agreement between the parties. While the contract had a three year term, "the parties' actions 'in the negotiation and performance of the . . . agreement' are more important factors to consider than the duration of the contract in determining whether this case 'should be subject to suit in [Michigan].'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (quoting *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co. Ltd.*, 91 F.3d 790, 796 (6th Cir. 1996)). Stated differently, "the *quality* rather than the *quantity* of the contacts is the proper subject of review. Similarly, we

should focus here on the *quality* of the parties' relationship, rather than the *duration* of the relationship." *Id.* (emphasis in original). The quality of the parties' relationship, including the negotiation, performance, and breach of the contract, does not indicate an ongoing course of dealing.

Information regarding defendant's customers is immaterial. Plaintiff attempts to establish minimum contacts by asserting that defendant is a "national" organization, has customers in Michigan, and solicits customers in Michigan. As stated above, these facts are insufficient to establish general jurisdiction. They also fail to create limited jurisdiction because plaintiff's claims do not derive from these contacts.

The contract itself does not illustrate purposeful availment. The contract states,

> ***Governing Law***. The Parties agree that this Agreement, and any disputes arising out of or related to this Agreement, shall be governed by, construed, and enforced in all respects in accordance with the laws of Michigan, United States of America, excluding its conflict of laws rules. The Parties agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement. For all disputes arising out of or related to this Agreement, the Parties submit to the exclusive subject matter jurisdiction, personal jurisdiction and venue of the United States District Court.

The contract does not include an explicit forum selection clause. Plaintiff suggests that the "United States District Court" language should be read with the choice of law provision to indicate an agreement to litigate in United States District Courts in Michigan. But, such a designation appears redundant in light of the choice of law provision, given that a Michigan District Court would likely apply Michigan law to these contract claims. It is, however, reasonable to read the provision as instructing a United States District Court in Georgia, or any other forum that has personal jurisdiction over defendant, to apply Michigan law. Finally, although the contract includes a choice of law provision, "such a provision standing alone [is] insufficient to confer jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

### 2. The Cause of Action Did Not Arise From Defendant's Contacts with Michigan.

In order for the cause of action to "arise from" the defendant's actions in the forum state, the operative facts of the controversy must be related to the defendant's contact with the state. *Beydoun*, 768 F.3d at 507. "[T]he plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Id.* at 507–08.

Here, plaintiff alleges that defendant failed to pay certain amounts owed under the contract. For jurisdictional purposes, a defendant's refusal to pay amounts owed under a contract takes place where the defendant resides. *See Kerry Steel*, 106 F.3d at 152 ("We are not persuaded that Kerry Steel has shown that its cause of action arose from the defendant's activities in Michigan. At its most basic level, the claim arose out of Paragon's failure to pay the full purchase price, based on the purported nonconformity of the goods with the specifications of the contract. The refusal to pay occurred in Oklahoma"); *Five Brothers Mortgage Co. Svcs & Securing, Inc. v. McCue Mortgage Co.*, 2017 WL 104539, at *7 (Mich. Ct. App., January 10, 2017) (where plaintiff's cause of action arose from defendant's alleged failure to pay monies owed under the parties' contract, defendant's failure to pay occurred in Connecticut where defendant was located and conducted all of its business, rather than Michigan where plaintiff was awaiting payment).

Plaintiff cannot demonstrate that its claims arise out of defendant's activities in Michigan because defendant's alleged failure to pay plaintiff occurred in Georgia, not in Michigan.

### 3. The Exercise of Jurisdiction is Not Reasonable.

The last consideration is whether the court's exercise of jurisdiction over defendant would be reasonable. This requires considering 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *I.P. Enterprises Pension Fund v. Hatfield*, No. 06-11162, 2006 WL 2367357, at *7 (E.D. Mich. Aug. 14, 2006) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Defendant argues that litigating this case in Michigan would be an extreme burden. It contends that any witnesses it would call to attest to its problems with plaintiff's software – the core of this dispute – are located outside of Michigan. The Court agrees; requiring defendant to litigate in Michigan would be placing a substantial burden on it, especially given the tenuous connection formed between defendant's activities and the State of Michigan.

Michigan's interest in this litigation is tenuous because ultimately the contract was for goods and services to be delivered to Georgia. However,

Michigan does have an interest in seeing that its residents get paid for work they perform pursuant to contracts. Ultimately, because defendant has limited contacts with Michigan, the burden placed on defendant outweighs plaintiff's and the forum state's interest.

Where a plaintiff fails to establish purposeful availment, it is unnecessary to consider the remaining two elements, because failure to meet one element means that personal jurisdiction may not be invoked. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed.Appx. 518, 523 (6th Cir. 2006) (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)). Nevertheless, as explained above, plaintiff has failed to establish any of the elements required to satisfy due process. Therefore, the Court cannot exercise personal jurisdiction over defendant without offending traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316. The court will grant defendant's motion to dismiss and dismiss the action without prejudice. *See Intera Corp. v. Henderson*, 428 F.3d 605, 620–21 (6th Cir. 2005) (explaining that dismissal for lack of personal jurisdiction does not operate as adjudication on the merits, and, therefore, must be without prejudice). As such, defendant's alternative request for transfer of venue is moot.

## IV. Conclusion

For the reasons stated above, defendant's motion to dismiss is GRANTED. The case is dismissed without prejudice.

IT IS SO ORDERED.

Dated: February 16, 2018

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 16, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk